UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                    Chapter 13
Raymond J. Wetzel and                                                    Case No. 04-33546-svk
Patricia A. Wetzel,

              Debtors.

Memorandum Decision on Trustee's Motion to Modify Plan

    The issue in this case is whether the Chapter 13 Trustee should be permitted to modify the Debtors' Chapter 13 plan pursuant to 11 U.S.C. § 1329(a) to increase payments to creditors and extend the life of the plan. The Court must decide whether the Trustee's Motion is timely, whether the post-confirmation earnings and inheritance are property of the estate and whether the Trustee is entitled to modify the plan in light of the increase in inheritance and income.

Facts

    The Debtors filed a voluntary petition on September 20, 2004, and this case is accordingly not governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[1] The Court confirmed the Debtors' original Chapter 13 plan on November 15, 2004. In their Statement of Financial Affairs, the Debtors listed combined income of $36,350 for 2004. According to the Trustee, when the Debtors submitted their required post-confirmation tax returns, their gross income had grown to $99,644 in 2005 and $136,705 in 2006. Additionally, the Trustee notes that the Debtors claimed $13,800 gambling winnings on one of the tax returns. The Trustee investigated, learned that the Debtors received an inheritance and some business income, and filed a Motion to modify the plan from 36 to 60 months and to increase the confirmed plan percentage from a 33% to a 100% payout. The modification proposes to increase the monthly payments from $1,000 to $2,700 effective October 2007, which the Trustee believes the Debtors can manage based on the calculations from the 2006 tax returns.

    The Debtors replied to the Trustee's Motion with amended Schedules I & J. The Debtors agree that they have experienced good fortune, but contend that the Trustee's Motion is untimely and would have been appropriate in 2005. A portion of the extra money came from a business that Mr. Wetzel started with his adult children post-confirmation. Mr. Wetzel receives gross weekly pay of $800 and $516 after taxes from the business. Mrs. Wetzel inherited an investment account of $100,000 in September 2005. That account produces dividends and interest that supplements the business income. However, the Debtors contend their finances are reverting to their pre-confirmation state, as Mrs. Wetzel is out of the workforce as indicated in amended Schedule I. Mrs. Wetzel is not in good health and was hoping she would not have to return to

---

[1] The Court notes that the applicable provisions have not changed under BAPCPA.

work. The Debtors have offered to modify their plan to provide a 61% dividend which they contend takes into account their current disposable income.

Analysis

Section 1329 of the Bankruptcy Code governs modification of a plan after confirmation. Section 1329(a) provides that "at any time after confirmation but prior to completion of plan payments, the plan can be modified upon the request of the "debtor, the trustee or the holder of an allowed unsecured claim." Plan modification is appropriate in the following three situations: to increase or reduce the amount of payments, to increase or decrease the time of payments, or to alter the amount of payment to a creditor under the plan to account for a payment made outside of the plan. The Seventh Circuit Court of Appeals considered post-confirmation modification in *In re Witkowski*, 16 F.3d 739 (7th Cir. 1994). In that case, the bankruptcy court confirmed a plan under which the debtor proposed payments of $600 per month to pay secured creditors in full and a dividend of 10% to unsecured creditors. Due to the failure of many creditors to file claims, the $600 per month payments would be enough to pay creditors 19%, and the trustee filed a motion to modify the plan to increase the dividend to 19%. Based on authority from the Fourth Circuit, the debtor argued that the trustee's modification should be denied, because the order confirming the plan should be accorded res judicata effect unless there had been a substantial, unanticipated change in circumstances in the debtor's case. The Seventh Circuit held that the plain language of § 1329 did not require a change in circumstances before the trustee or a creditor could propose a modification of the plan. 16 F.3d at 746. Rather, the trustee's right to seek post-confirmation modification of a bankruptcy plan before completion of plan payments "is absolute." *Id.* at 748. However, the court need not always grant a motion to modify, as the decision whether to grant plan modification is within the discretion of the bankruptcy court, and is subject to the requirements that plan modifications be proposed in good faith. *Id.*

The policy underlying § 1329 is to "to allow upward or downward adjustment of plan payments in response to changes in a debtor's circumstances which substantially affect the ability to make future payments." *In re Nott,* 269 B.R. 250, 252 (Bankr. M.D. Fla. 2000) (citing *In re Trumbas,* 245 B.R. 764, 767 (Bankr. D. Mass. 2000)). Often, the trustee is privy to information that is unavailable to creditors and usually becomes an ally in the effort to "police the case." *See* Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* § 59.1 (2000 & Supp. 2004). Accordingly, post-confirmation plan modification is "usually sought by… the trustee when the debtor experiences an increase or windfall" (e.g. an inheritance or lottery winning). *In re Nott,* 269 B.R. at 252.

The Debtors contend that the Trustee's Motion is untimely, specifically 18 months late, because the increase in income was reflected in the 2005 tax return. While it is unfortunate that the Trustee's Motion to Modify the Plan was filed almost two years after the inheritance, nothing in the record suggests that the Debtors brought the inheritance to the Trustee's attention. They apparently submitted tax returns which showed business and investment income, and expected the Trustee to ferret out the information that they had started a business and received an inheritance. If the Debtors had reported the inheritance to the Trustee, and indicated that the Debtors did not believe that the inheritance was cause for the modification of the plan due to

2

Mrs. Wetzel's corresponding loss of income, and the Trustee did nothing with the information for two years, it may be a different story. However, the Debtors, as far as the Court knows, did nothing to alert the Trustee, and therefore, cannot be heard to complain when the Trustee gleaned the situation from the tax returns. Moreover, this is not a situation where the Trustee waited until the Debtors completed the plan to seek the modification. *See, e.g., In re Jacobs,* 263 B.R. 39 (Bankr. N.D.N.Y. 2001). Since it is uncontested in this case that the Debtors have yet to complete their plan payments, the Trustee's Motion to modify is timely under § 1329 and FED. R. BANKR. P. 3015(g). *See In re Brown,* 332 B.R. 562, 564 (N.D. Ill. 2005).

While the Trustee's Motion is couched in the terms of the Debtors' receipt of new sources of disposable income, the disposable income test technically does not apply in this case. "At the very least, courts should agree that the disposable income test does not apply when the proponent of the modification is the trustee or the holder of an allowed unsecured claim and the objecting party is the debtor." Lundin, *Chapter 13 Bankruptcy, 3d Edition* at § 255-1. Furthermore, in *In re Brown,* the court agreed with the debtor's contention that "the Code does not require that plans be modified if a debtor's disposable income increases… as such monitoring of all chapter 13 debtor's post-petition income would place an enormous burden on the system." 332 B.R. at 564. Courts in the Seventh Circuit have held that § 1325(b) (the disposable income or best efforts test) does not apply in plan modifications because the plain language of § 1329(b) does not reference § 1325(b). *See In re Young*, 370 B.R. 799 (Bankr. E.D. Wis. 2007); *In re Forte,* 341 B.R. 859, 864 (Bankr. N.D. Ill. 2005); *In re Golek,* 308 B.R. 332 (Bankr. N.D. Ill. 2004). Moreover, Judge Lundin's analysis is that the disposable income test does not apply when the trustee is the movant, rather it only applies if the trustee or creditor *objects* to a plan. Lundin, *Chapter 13 Bankruptcy, 3d Edition* at § 255-1.

Although the disposable income test does not explicitly apply, courts have recognized that the "debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion." *See In re Sounakhene,* 249 B.R. 801 (Bankr. S.D. Cal. 2000) (citing *Max Recovery v. Than (In re Than),* 215 B.R. 430 (B.A.P. 9th Cir. 1997); *Powers v. Savage (In re Powers),* 202 B.R. 618 (B.A.P. 9th Cir. 1996)). This approach allows the Court to take into account the essential components of the disposable income test while upholding the plain language of § 1329 that omits the test. *Id.*

Since confirmation of their plan, the Debtors have encountered two new sources of wealth. The Debtors inherited an investment account of about $100,000 that provides dividends and income. Mr. Wetzel also owns a percentage of a business, which he started with his sons after the plan was underway, and the business generates steady monthly income. An important consideration is whether the Debtors' inheritance and business earnings are property of the bankruptcy estate. Many courts have held that a Chapter 13 estate can include gifts, inheritances and causes of action that are acquired by a debtor post-confirmation. *In re Nott,* 269 B.R. 250 (Bankr. M.D. Fla. 2000) (inheritance); *In re Drew,* 325 B.R. 765, 769 (Bankr. N.D. Ill. 2005) (citing *In re Euerele,* 70 B.R. 72 (Bankr. D.N.H. 1987) (inheritance)); *In re Koonce,* 54 B.R. 643 (Bankr. D.S.C. 1985) (lottery winnings); *Doane v. Appalachian Power Co. (In re Doane),* 19 B.R. 1007 (W.D. Va. 1982) (money loaned to debtor by relative); *In re Harvey*, 356 B.R. 557 (Bankr. S.D. Ga. 2006) (post-confirmation personal injury claim). Others have disagreed. *See, e.g., Foreman v. J. Walter Constr. Co. (In re Foreman)*, 378 B.R. 717 (Bankr. S.D. Ga. 2007)

3

(post-confirmation wrongful death action). This determination is especially important as "a bankruptcy court has no jurisdiction to entertain a motion by a trustee or creditor under § 1329 seeking to take property acquired by a debtor after confirmation unless the court concludes the property is property of the bankruptcy estate rather than the debtor." *In re Forte,* 341 B.R. at 865.

Three sections of the Bankruptcy Code must be consulted to determine whether the inheritance and post-confirmation business income are property of the estate. Section 541(a) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." In Chapter 13 cases, § 1306 expands the estate to include the property specified in § 541 as well as "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12." Section 1327(b) complicates matters by providing that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

In this case, the plan states, rather cryptically: "Title to the debtor's property shall revest in the debtor on confirmation of a plan." The Order confirming the plan states that unless provided otherwise in the plan, all property of the estate as defined under § 1306(a) shall remain under the exclusive jurisdiction of the Court. The Court interprets the plan to mean that property of the estate revested in the Debtors at confirmation. But what of post-confirmation property? Section 1306(a) contemplates that the property of the debtor will continue to accumulate in the estate until the case is dismissed or converted. Does the language of the Debtors' plan mean that the post-confirmation property of the estate also revests in the Debtors? This Court is not the first to grapple with this issue. *See Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 153 (4th Cir. 2007) (citing *Woodard v. Taco Bueno Rests., Inc.*, 2006 U.S. Dist. LEXIS 89135 (N.D. Tex. Dec. 8, 2006) (discussing various interpretations of the interplay between §§ 1306(a)(1) and 1327(b))).

There are three basic interpretations of the tension between §§ 1306(a)(1) and 1327(b). *United States v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007). Under the first approach, the "vesting" at confirmation extinguishes the estate. *See, e.g., Oliver v. Toth (In re Toth)*, 193 B.R. 992 (Bankr. N.D. Ga. 1996); *In re Mason*, 45 B.R. 498 (Bankr. D. Or. 1984), *aff'd*, 51 B.R. 548 (D. Or. 1985). The problem with this analysis is that it completely ignores the definition of § 1306(a), continuing the estate until closing, dismissal or conversion of the case. The second approach is that all property or earnings acquired after confirmation remains property of the estate. Under this approach, the only property vesting in the debtor is property that existed at confirmation. *See Barbosa v. Soloman*, 235 F.3d 31, 35 (1st Cir. 2000). The third or middle ground approach has found some acceptance by the courts in the Seventh Circuit, and was adopted in dicta by the Court of Appeals. Under this interpretation, only the post-confirmation property needed by the debtor to fund the plan remains property of the estate. *See In re Price*, 130 B.R. 259 (N.D. Ill. 1991); *In re Ziegler*, 136 B.R. 497 (Bankr. N.D. Ill. 1992). *See also Black v. United States Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) ("We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."). First it is not clear that the Court of Appeals dicta was referring to

4

post-confirmation inheritances or lottery winnings. Moreover, it is difficult to determine whether post-confirmation property is necessary to fund the plan. *See Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 854 (W.D. Mich. 1997) (no textual basis exists for distinguishing between post-confirmation property that is "necessary" and that which is "not necessary" to funding the plan). Application in our case illustrates the difficulty. Presumably the Trustee would argue that the inheritance and business income is necessary to fund the modified plan that she has proposed for the Debtors. The Debtors would likely claim that only their post-petition wages are necessary to fund the original plan. However, Mrs. Wetzel is no longer working, and arguably some of the income from the business and inheritance is necessary to make even the lesser payments on the plan.

More courts have begun to adopt the second approach treating all post-confirmation earnings and post-confirmation property as property of the estate. *See United States v. Harchar*, 371 B.R. at 268 (calling the second approach the "growing majority"). And most courts analyzing post-confirmation "windfalls" have found them to be property of the estate. The court in *In re Nott,* held that a $300,000 post-petition, post-confirmation inheritance is property of the estate under the rationale that "§ 1306(a) operates to replenish the estate post-confirmation until the case is closed, converted or dismissed." 269 B.R. 250, 257 (Bankr. M.D. Fla. 2000) (citing *In re Rangel,* 233 B.R. 191, 198 (Bankr. D. Mass. 1999); *In re Fisher,* 203 B.R. 958 (N.D. Ill. 1997)). This Court concludes that the approach adopted by the courts in *Harchar, Nott* and *Barbosa* is the most logical reconciliation of §§ 1306(a) and 1327(b). When the plan or order confirming the plan provides that the property of the estate revests in the debtor at confirmation, only those property interests existing at confirmation revest in the debtor. The estate is not extinguished by confirmation, but rather is comprised of new property acquired by the debtor post-confirmation, whether via inheritance, wages or other means. Under this rule, the Debtors' post-confirmation inheritance and post-confirmation business income is property of the estate, and is the proper subject of a plan modification.

The Chapter 13 Trustee, as the proponent of the plan modification, bears the burden of satisfying the standards for confirming the plan modification. *In re Brown,* 332 B.R. 562 (Bankr. N.D. Ill. 2005). Modifications are not limitless and are only allowed in three limited circumstances to accomplish the results covered by § 1329(a)(1), (2), and (3). *In re Plummer,* 378 B.R. 569 (Bankr. C.D. Ill. 2007); *Bank One, NA v. Leuellen (In re Leuellen),* 322 B.R. 648 (N.D. Ind. 2005). Modification must be consistent with the statutory requirements for confirmation listed in § 1329(b). *Max Recovery v. Than (In re Than),* 215 B.R. 430 (B.A.P. 9th Cir. 1997). Section 1329(b) provides that the requirements of 1325(a) apply to any modification under subsection (a). In this case, the Court must be satisfied that the proposed modification satisfies the good faith test in § 1325(a)(3), the best interests of creditors test in § 1325(a)(4) and the feasibility test in § 1325(a)(6).

The good faith test under § 1325(a)(3) simply requires that the "plan has been proposed in good faith." Courts have held that "confirming a modified plan that reflects a significant increase in income and a commensurately increased payout to unsecured creditors comports with that good faith requirement." *In re Brown,* 332 B.R. at 566 (Bankr. N.D. Ill. 2005) (citing *Arnold v. Weast ( In re Arnold),* 869 F.2d 240 (4th Cir. 1989); *In re Sounakhene,* 249 B.R. 801 (Bankr. S.D. Cal. 2000)). The Debtors have questioned the delay in the Chapter 13 Trustee's filing of

5

the proposed modification which could be an indirect challenge to the Trustee's good faith, but the Court concludes that the delay is reflective of the Trustee's caseload, not some ulterior motive. The Court finds that the Trustee has proposed the modification in good faith.

The best interest of creditors test requires that as of the effective date of the plan, the property to be distributed under the plan to unsecured creditors is not less than the amount that would be paid if the estate were liquidated under Chapter 7 on such date. 11 U.S.C. § 1325(a)(4). It is fairly well settled that in a modification situation, the "effective date" is the date of modification. *See In re Brown,* 332 B.R. at 567; *In re Nott,* 269 B.R. at 255; *In re Morgan,* 299 B.R. 118, 124-25 (Bankr. D. Md. 2003); *but see Forbes v. Forbes (In re Forbes)*, 215 B.R. 183 (B.A.P. 8th Cir. 1997) (effective date of the plan is the date of the originally confirmed plan). In this case, there is no information in the record about how much of the inheritance remains and would be available to creditors in a Chapter 7 liquidation. The Debtors may have some exemptions that could be applied to the inheritance. The Debtors filed Amended Schedules of Income and Expenses, but did not file an Amended Schedule of personal property. The Court cannot determine whether the application of the best interests test would require 100% to be paid to general unsecured creditors as proposed by the Trustee's modification. The Trustee did not carry the burden of proof that a 100% plan is necessary to satisfy the best interests test, and the modification cannot be confirmed over the Debtors' objection without such proof.

Information about the feasibility test is also lacking. The feasibility test in § 1325(a)(6) examines whether the "debtor will be able to make all payments under the plan and comply with the plan." If confirmed, the Trustee's modified plan would require the Debtors to increase payments from $1,000 to $2,700 per month over the next 24 months. The modified plan assumes that the Debtors will continue to receive income from Mr. Wetzel's business venture with his sons, as well as reap benefits in the form of dividends and interest income from the inheritance. The Debtors experienced significant financial improvements in 2005 and 2006 but counter that with Mrs. Wetzel's declining health and loss of income, they cannot afford to make payments of $2,700 per month. They have offered to increase their payments but not to the extent required by the Trustee's proposed modification. The Court cannot determine whether the Trustee's plan is feasible without examining a clearer and more detailed picture of the Debtors' current financial situation. The Debtors may be experiencing a temporary loss of income with the decline in the stock market or they may be gambling away a windfall that should otherwise be dedicated to their creditors. The Court simply does not have enough of a record to make a determination.

The Court notes concern with the Debtors' decision to gamble with their post-confirmation income. According to Judge Lundin, "cases support the proposition that a [trustee] can force the debtor with improved financial condition to a choice: accept an increase in payments to creditors or get out of Chapter 13." *Chapter 13 Bankruptcy, 3d Edition* § 266.1. One court surmised that "Congress…intended that the debtor repay his creditors to the extent of his capability during the Chapter 13 period. Certainly, Congress did not intend for debtors who experience a substantially improved financial condition after confirmation to avoid paying more to their creditors." *In re Sounakhene,* 249 B.R. 801, 805 (Bankr. S.D. Cal. 2000). Rather, "unanticipated windfalls should inure to the benefit of the creditors, not the debtor." *In re Bostwick,* 127 B.R. 419 (Bankr. N.D. Ill. 1991) (citing *In re Fitak,* 92 B.R. 243 (Bankr. S.D. Ohio 1988)). It is "not the design of

6

the Bankruptcy laws to allow the debtor to lead the life of Riley while his creditors suffer on his behalf." *In re Bryant,* 47 B.R. 21, 26 (Bankr. W.D.N.C. 1984). The Debtors' use of post-confirmation income to gamble for personal entertainment while claiming that they cannot dedicate an additional $700 per month in repayment of their creditors does not comport with the Court's understanding of the philosophy of Chapter 13.[2]

<u>Conclusion</u>

The Motion of the Chapter 13 Trustee to modify the plan is timely, as it was filed prior to completion of all the payments under the plan. The Debtors' post-confirmation inheritance and post-confirmation business income are property of the estate, and are the proper subject of the Trustee's modified plan. However, the Court does not have enough information to determine whether a 100% payment plan is required by the Debtors' current financial situation. Assuming that it is so, the Court cannot determine whether the Trustee's proposal is feasible. The Debtors claim it is not, but have only given bare bones information in support of their assertion. If the 100% plan is required by the best interests test, but is not feasible due to the Debtors' financial situation, it is possible that this case should be dismissed. *See, In re Richardson*, 283 B.R. 783, 800 (Bankr. D. Kan. 2002) ("If after plan confirmation, a debtor receives a windfall sufficient to pay the projected disposable income, but fails to do so, the trustee should move to dismiss the case, not try to pursue the windfall. Dismissal will deny the debtor a discharge and allow his or her creditors freedom to collect their full claims from the windfall under state law."). A hearing will be scheduled within 30 days to provide the Trustee and the Debtors the opportunity to present evidence on the best interest and feasibility test.

Date: January 29, 2008

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge

---

[2] According to the Trustee, the Debtors' income from gambling winnings in one year was $13,800. Perhaps the Debtors can explain that this was a result of one or two jackpots won on smaller bets. If in fact, significant funds were expended to net $13,800 while unsecured creditors were paid far less under the plan, the Debtors' luck may have run out.

7